UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHIRLA WOODS, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 12-cv-06088 (DMC) (JBC) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the appeal of Shirla Woods ("Plaintiff" or "Claimant") from the final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claims for a period of disability and disability insurance benefits under Title II and/or Title XVI of the Social Security Act ("Act") upon a decision from Administrative Law Judge Michal L. Lissek (the "ALJ" or "ALJ Lissek"). This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully reviewing the submissions of both parties, for the reasons expressed herein, the final decision entered by the ALJ is **affirmed**.

I. **BACKGROUND**

A. **Procedural History**

On August 13, 2009, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning on February 24, 2009. (Tr. 107-108). The

1

claim was denied initially and again upon reconsideration. (Tr. 54). Plaintiff then filed a timely written request for a hearing before an Administrative Law Judge to review the application. (Tr. 66-67). Plaintiff appeared and testified at a hearing held on September 13, 2011 in Newark, New Jersey. (Tr. 28, 30). Plaintiff was denied eligibility for disability benefits under sections 216(i) and 223(d) of the Social Security Act on November 9, 2011, by ALJ Lissek. (Tr. 22). On June 7, 2012, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision, (Tr. 4-9), leading to this appeal.

B. **Factual History**

i. **Findings of the Administrative Law Judge**

The relevant findings of the ALJ were as follows: (1) Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013; (2) Plaintiff has not engaged in substantial gainful activity since the amended onset date of February 24, 2009; (3) Plaintiff has the following severe combination of impairments of insulin dependent diabetes, mellitus, fibroids, chronic back pain syndrome, fibromyalgia, and secondary depression; (4) Plaintiff does not have "an impairment or combination of impairments that meets or medially equals the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix." (Tr. 16-17).

In terms of future employment capacity, the ALJ further found that: (5) Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a),[1] but Plaintiff could never climb ladders, ropes, or scaffolds or crawl; she could

---

[1] "Sedentary work" encompasses "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. "Although a sedentary job… involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). Standing or walking should generally total no

2

occasionally stoop, kneel, crouch, or climb ramps or stairs; could not reach overhead with either arm; could only perform work that involved simple instructions and could be learned in one month or less; and could only perform low stress work, i.e. positions in which work was judged at the end of the day instead of every 5 or 10 minutes, where there are not a lot of work related decisions and where the routine does not change throughout the day; (6) Plaintiff is unable to perform any past relevant work as these jobs had requirements that exceeded Plaintiff's RFC, including her work as a waitress, customer service representative, fountain server, receptionist, teller or clerk; (7) Plaintiffs job skills do not transfer to other occupations within the residual functional capacity defined in 20 CFR § 404.1568, and finally; (8) given Plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy, and thus, making Plaintiff not disabled within the meaning of the Social Security Act. (Tr. 17-22).

ii. **Plaintiffs Testimony**

Plaintiff testified that she had a history of back and shoulder problems dating back to 2003. (Tr. 38). After Plaintiff was involved in a motor vehicle accident in February 2009, she stopped working as a customer service representative because she suffered from severe hip and back pain that was affecting her entire body. (Tr. 18, 36). Plaintiff's job as a customer service representative was her most recent job. (Tr. 34-36). From February 2009 to July 2009, Plaintiff was under the care of Robinson Rehabilitation and Wellness Center, in which she received medical treatment, including chiropractic care, physical therapy, acupuncture, massages and therapeutic heat. (Tr. 18, 36). Plaintiff also testified that she was temporarily seeing a mental

---

more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour work day. Social Security Ruling ("SSR") 83-10.

health professional for depression, who prescribed her medication to assist her depression. (Tr. 18, 40). Plaintiff claims that because her current medical insurance does not cover mental health treatment, she is no longer seeing a mental health professional. (Tr. 18, 40-41). Nevertheless, Plaintiff testified that she still has symptoms of depression. (Tr. 18, 40-42).

With respect to Plaintiff's pain, she testified that she could walk maybe one block and then she had cramps in her lower back and hip pain radiating down her leg. (Tr. 18, 46). Further, Plaintiff had problems sitting due to her significant back and hip pain. (Tr. 18, 47). Specifically, Plaintiff claimed that she could sit for about 30 minutes before getting irritable and then she had to get up and move around for 5-10 minutes. (Tr. 19, 49). Plaintiff testified that the magnitude of the pain would cause her to lie down during the day and affected her ability to sleep throughout the night. (Tr. 18-19, 47-48). Given Plaintiff's pain was progressively worsening and thereby needed outside assistance, Plaintiff's mother moved in with her in April 2010. (Tr. 18, 20, 43). Plaintiff's mother assisted Plaintiff reach high cabinets, assisted Plaintiff do her hair, and sometimes assisted Plaintiff get in and out of the bathtub. (Tr. 20, 43). In addition, Plaintiff testified that while food shopping, she always had her mother or a friend assist her in carrying the grocery bags. (Tr. 18, 45-46). Plaintiff also noted that she was able to care for her daughter during this time based on her ability to drive her daughter, with the assistance of her mother, to day care. (Tr. 20, 43-44). As a result, Plaintiff was able to accomplish most daily tasks, but needed assistance from her mother and friend.

iii. **Medical Evidence**

After Plaintiff's 2009 car accident, which increased her back and hip pain, she received treatment from the Robinson Rehabilitation and Wellness Center from February to July 2009. (Tr. 19). Although Plaintiff complained of severe left hip and lower back pain and spasms, the

4

results of her bilateral hip magnetic resonance imaging ("MRI") scans were negative. (Tr. 19, 244). Further, the results of a lumbosacral MRI scan showed only minimal disc desiccation (degeneration) at the L4-5 level but were otherwise normal with no evidence of herniation, neural compromise or other abnormality. (Tr. 19, 244, 247).

On June 3, 2009, after physically examining Plaintiff, Dr. Erica David concluded that even though Plaintiff was diagnosed with chronic low back pain and spinal strain, Plaintiff's gait was normal, with normal muscle tone in both upper and lower extremities, symmetric reflexes, and intact sensation. (Tr. 19, 198, 222, 249). Although treating the lower back pain with medication was discussed during Dr. David's examination, Plaintiff refused medication at this time. (Tr. 198, 222, 249). In both December 2009 and January 2010, state agency physician Dr. Anthony Cirillo examined Plaintiff's exertional limitations and opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could sit for 6 hours and stand and/or walk for up to 4 hours in an 8-hour day, and could occasionally push and/or pull with her lower extremities. (Tr. 267, 306). Dr. Cirillo also opined that Plaintiff had unlimited ability to push and/or pull with her upper extremities, had no limitation in her ability to reach, handle, finger, and feel; could not crawl or climb ladders, ropes or scaffolds; but could occasionally stoop, kneel, crouch, and climb ramps or stairs; and could frequently balance. (Tr. 267, 269, 306). Dr. Cirillo further reported that Plaintiff had no visual or environmental limitations. (Tr. 269, 306). State agency physician, Dr. Toros Shahinian, reviewed the record and affirmed Dr. Cirillo's findings in March 2010. (Tr. 322).

Dr. Mariam Rubbani, who performed an orthopedic consultative examination in January 2010, reported Plaintiff had painful but full range of motion in her hips, shoulders, and cervical spine. (Tr. 19, 288, 290-91). Despite noting that Plaintiff's lumber spine was tender, Dr.

Rubbani's report indicated that Plaintiff had full strength in her lumber spine, which allowed Plaintiff to walk at a reasonable pace, as well as change and transfer to and from the examination table independently. (Id.) Dr. Rubbani's report also demonstrated Plaintiff had full grip and pinch strength bilaterally, and could separate papers and fasten buttons. (Tr. 290). While Dr. Champak Gandhi was Plaintiff's only treating physician during this relevant time, he treated Plaintiff for insulin dependent diabetes mellitus and fibroid tumors. (Tr. 19, 326-27). According to Dr. Gandhi's medical report on August 29, 2011, Plaintiff's pain was not chronic because she had pain and fatigue only "off and on," and because Plaintiff was capable of standing and walking continuously in a work setting. (Tr. 327, 329). Dr. Gandhi also reported that Plaintiff could lift and carry up to 10 pounds occasionally, and that she had no significant limitations in performing repetitive reaching, handling, fingering, and lifting. (Tr. 20, 329).

There is conflicting evidence with respect to Plaintiff's fibromyalgia diagnosis. Dr. Rubbani, the consultative examiner, diagnosed Plaintiff with fibromyalgia. Dr. Fadairo Afolabi, a chiropractor at Robinson Wellness Center, found fibromyalgia as a "symptom," but not as a formal diagnosis. (Tr. 202-03).[2] After conducting a laboratory test in September 2009, Dr. Gandhi found an indication of fibromyalgia based on Plaintiff's elevated sedimentation rate but did not diagnose Plaintiff as suffering from fibromyalgia. (Tr. 20, 242, 326-27). Finally, Dr. David, a medical doctor, did not diagnose Plaintiff with fibromyalgia or even treat her for this condition. (Tr. 198).

---

[2] Because a chiropractor is not considered an "acceptable medical source" who can establish that a claimant has a medically determinable impairment, the Court does not consider Dr. Afolabi's diagnosis. See Hartranft v. Apfel, 181 F.3d 358, 361 (3d Cir. 1999) (citing 20 C.F.R. § 416.913) (Finding "a chiropractor's opinion is not 'an acceptable medical source' entitled to controlling weight.").

In regards to Plaintiff's mental condition, as an initial matter, Plaintiff did not see a mental health professional during most of the relevant period. (See Tr. 18). In May 2009, Dr. Afolabi assessed that Plaintiff was mentally alert and cognizant of her surroundings. (Tr. 203). The following month, Dr. David reported that Plaintiff was a well-developed, well-nourished female in no acute distress. (Tr. 198). Even Plaintiff herself admitted that she had no difficulty getting along with others, including authority figures, and did not state any significant limitations in her activities of daily living as a result of her asserted mental impairment. (See 125-32). At a psychological consultative examination in December 2009, Dr. Marc Friedman reported that Plaintiff not only had no signs of psychosis, but also had adequate memory and average intelligence in light of the fact that Plaintiff spoke clearly using complete sentences, had no difficulty with abstraction, had adequate eye contract, and made spontaneous comments. (Tr. 274). With respect to Plaintiff's cognitive abilities, Dr. Freidman noted that Plaintiff was aware of the date and location, able to recall the current and previous two presidents, able to perform serial sevens correctly until 86, able to calculate six times $.25, and able to correctly repeat four digits forward and three digits in reverse. Id. Similarly, in January 2010, Dr. Henry Rubenstein, a consultative examiner, reported that Plaintiff was alert, oriented, answered questions in a reasonable manner and was dressed appropriately for the examination. (Tr. 282).

Moreover, state agency physician Dr. Thomas Yared, who reviewed Plaintiff's records in January 2010, found Plaintiff's physical and mental limitations to be no more than mild to moderate. (See Tr. 292-305). In support of his conclusion, Dr. Yared considered Dr. Friedman's evaluation, and noted that his findings of Plaintiff's allegedly severe mental condition were "generally benign" and that Plaintiff demonstrated "good" cognitive functioning, adequate memory, and full range of affect. (Tr. 305). Dr. Yared further emphasized Plaintiff's own

7

statements in her functioning report, which noted that her functioning was predominately limited by her physical condition. (Tr. 305, See Tr. 125-32). In sum, Dr. Yared found that there was no support in the record illustrating Plaintiff suffered from any persistent or marked limitations. (Tr. 303-05). In May 2010, Dr. Herman Huber reviewed the entire record and concluded that Dr. Yared's RFC assessment should be affirmed. (Tr. 324).

## II. **STANDARD OF REVIEW**

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered "substantial." For instance:

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). As such, it does not matter if this Court "acting *de*

*novo* might have reached a different conclusion" than the Commissioner. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). "The district court... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F.Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning. Accordingly,

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)). A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F.Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was rejected, the court is not permitted to determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

## III. APPLICABLE LAW

### a. The Five-step Process

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. A claimant is considered disabled under the Social Security Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). A claimant bears the burden of establishing his or her disability. 42 U.S.C. § 423(d)(5).

To make a disability determination, the Commissioner follows a five-step process pursuant to 20 C.F.R. § 416.920(a). Under the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is work that involves significant and productive physical or mental duties, and is done (or intended) for pay or profit. 20 C.F.R. § 416.972. If the claimant establishes that she is not currently engaged in such activity, the Commissioner then determines whether, under step two, the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii).

The severe impairment or combination of impairments must "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The impairment or combination of impairments "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. If the Commissioner finds a severe impairment or combination of impairments, he then proceeds to step three, where he must determine whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in Appendix 1 of the regulations ("Listings"). 20 C.F.R. §

416.920(a)(4)(iii). Upon such a finding, the claimant is presumed to be disabled and is automatically entitled to benefits. 20 C.F.R. § 416.920(d). If, however, the claimant does not meet this burden, the Commissioner moves to the final two steps.

Step four requires the Commissioner to determine whether the claimant's RFC sufficiently allows her to resume her previous work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can return to her previous work, then she is not disabled and therefore cannot obtain benefits. 20 C.F.R. § 416.920(e). If, however, the Commissioner determines that the claimant is unable to return to her prior work, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner, who must find that the Claimant can perform other work consistent with her medical impairments, age, education, past work experience and RFC. 20 C.F.R. § 416.920(g). Should the Commissioner fail to meet this burden, the claimant is entitled to social security benefits. 20 C.F.R. § 416.920(a)(4)(v).

### b. The Requirement Of Objective Evidence

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id. Credibility is a significant factor. When examining the record "the adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. Id. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

## IV. DISCUSSION

### a. The ALJ Correctly Identified Plaintiff's Severe Impairments

Plaintiff's first argument is that ALJ Lissek erroneously found "Plaintiff's depression to be 'secondary' to her other severe impairments" in light of the fact that the credible evidence showed that Plaintiff suffered "major depressive disorder." (Pl. Br. 15). Plaintiff claims that not only did ALJ Lissek fail to articulate any evidentiary basis for characterizing Plaintiff's depression as "secondary," but also that the ALJ's evidentiary analysis was biased to the extent it accorded more weight to the state agency review physician's examination rather than Plaintiff's treating physician. (Id. at 9, 15-16). The ALJ's second finding stated that Plaintiff suffered the following severe impairments: "insulin dependent diabetes, mellitus, fibroids, chronic back pain syndrome, fibromyalgia and secondary depression." (Tr. 16). The record stated:

> [Plaintiff] has complained of depression and she testified that she was under treatment for a brief period with a mental professional. However, there is no record evidence of such. She underwent a psychological consultative examination with Dr. Friedman who reported no signs of psychosis. Mood and affect were full.

12

(Tr. 16-17, 274). The evidence showed that Plaintiff did not see a mental health professional during most of the relevant period. In addition, Plaintiff's psychological examinations by her own treating physicians and the state agency review physicians showed no more than mild to moderate limitations. For instance, even Plaintiff's treating physician, Dr. Gandhi, did not include depression as a diagnosis, and specifically opined that emotional factors did not contribute to Plaintiff's functional limitations, which is consistent with his opinion that Plaintiff's symptoms would never interfere with her attention and concentration. (Tr. 326, 331-32). Moreover, Dr. Yared, a state agency review physician, considered Dr. Friedman's evaluation and found there was no support in the record that Plaintiff's depression significantly limited her mental RFC. (Tr. 303-05).

Thus, based on a reasonable reading of the medical record, the ALJ's finding of "secondary depression" rather than "major depressive disorder" at step two of the sequential evaluation process did not constitute an error by ALJ Lissek. More importantly, ALJ Lissek's decision did consider "depression" as a severe impairment based on the limited range of work that ALJ Lissek found Plaintiff was capable of performing. Accordingly, based on the substantial evidence standard of review and viewing the record in totality, the ALJ properly listed Plaintiff's severe impairments.

### b. The ALJ Properly Found Plaintiff's Depression Did Not Meet or Equal one listed in 20 CFR § 404.1520(d), specifically 12.04 Affective Disorders

Second, Plaintiff argues that ALJ Lissek erred when holding that Plaintiff's depression did not meet or medically equal one listed in 20 CFR § 404.1520(d), specifically 12.04 Affective Disorders under 20 CFR PT. 404, Subpt. P, App. 1. (Pl. Br. 15-16). In determining the severity of Plaintiff's mental impairment, Plaintiff must satisfy either the "paragraph B" or the

"paragraph C" criteria to establish that her mental impairment meets the criteria under 12.04. In order to satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: (1) marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensating, each of extended duration. A "marked" limitation encompasses an impairment that is more than moderate but less than extreme. See 20 C.F.R. § 404. Under the "paragraph C" criteria, the burden is on Plaintiff to provide:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; or (2) [a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) [c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement

12.04 Affective Disorders under 20 CFR PT. 404, Subpt. P, App. 1. The administrative decision stated:

> In activities of daily living, [Plaintiff] has mild restriction. She lives with her mother and young daughter and her only limitations regarding daily activities are associated with pain. She cares for her daughter; she handles her own personal care; she does occasional house chores; and she handles bills, money, etc…. In social functioning, [Plaintiff] has mild difficulties. [Plaintiff] is not under any mental health treatment. She reported that she has no problem getting along with others and that she gets along with authority figures very well….With regard to concentration, persistence or pace, [Plaintiff] has moderated difficulties….As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration…Because [Plaintiff's] mental impairment does not cause at least two "marked" limitations or one "marked limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B criteria are not satisfied.

(Tr. 17).

14

These findings are supported by substantial evidence in the administrative record. First, the ALJ noted that according to Plaintiff's own testimony, she met with a mental health professional for only a brief period since February 2009. (Tr. 17-18). Second, the ALJ properly accorded significant weight to the assessments provided by both Dr. Friedman and Dr. Yared. See 20 C.F.R. § 404.1527(f); See also SSR 96-6 ("state agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."). The state agency review physicians found Plaintiff's mental limitations were moderately limited at best. (See Tr. 273-75, 303-05). Specifically, Dr. Friedman found Plaintiff had adequate memory and average intelligence for the following reasons: (1) Plaintiff was able to speak clearly using complete sentences; (2) she had no difficulty with abstractions; (3) she was able to maintain adequate eye contact; (4) she was aware of the date and location; (5) she was able to recall the current and previous two presidents; (6) she was able to perform serial sevens correctly until 86; (7) she was able to calculate six times $.25; and (8) repeat 4 digits and 3 digits in reverse. (Tr. 274). After considering Dr. Friedman's evaluation and Plaintiff's own statements that her functioning was predominantly limited by her physical condition, Dr. Yared concluded that Plaintiff's mental limitations were no more than mild to moderate. (Tr. 292-305).

In addition, in light of the fact that Plaintiff contends that her depression has significantly affected her mental RFC, Plaintiff conceded she had no problem getting along with others and that she gets along with authority figures very well. (Tr. 17, 131). Moreover, even Dr. Gandhi, her own treating physician, reported no diagnosis of depression, and specifically noted that emotional factors did not contribute to Plaintiff's functional limitations. (Tr. 20, 326, 331). Given the fact that Plaintiff has the burden of persuasion in satisfying step three of the sequential

15

evaluation process, the Court finds it significant that Plaintiff failed to identify any particular depression-related symptom or limitation that was not considered by the ALJ's assessment of her mental RFC limitations. Accordingly, based on the ALJ's consideration of Plaintiff's allegations of depression as well as the objective medical findings, the ALJ properly found Plaintiff's depression is not sufficiently severe to satisfy one of the impairments listed in 20 CFR PT. 404, Subpt. P, App. 1.

### c. The ALJ properly found Plaintiff's Physical Impairments Did Not Prohibit Plaintiff from Performing Sedentary Work

Third, Plaintiff asserts that ALJ Lissek erred when holding that she was capable of performing sedentary work. (Pl. Br. 13.). Specifically, Plaintiff argues that the ALJ erred because ALJ Lissek does not provide any explanation as to how her chronic back pain and her other severe impairments would restrict her from performing sedentary work:

> Plaintiff can perform sedentary work as defined in the regulations (sit 6 hours, stand 2 hours, lift up to 10 lbs.). Okay why? How can Plaintiff, previously found to suffer "severe" chronic back pain syndrome, sit comfortably for 6 hours a day while maintaining a competitive pace and concentrating on her labors. Where in the decision is this explained? Next, we are told that Plaintiff can never climb ladders, ropes or scaffolds. What sedentary job requires the climbing of ladders, ropes or scaffolds? Next, we are told Plaintiff can never crawl but she can kneel and crouch 2½ hours a day (occasionally). How in the world is this possible and does the ALJ explain the differences? How can an individual with chronic back pain which limits her to sedentary work perform 2 ½ hours of kneeling, or crouching? And if she can, why can't she crawl?

(Pl. Br. 13-14). After reviewing the record, ALJ Lissek found "[Plaintiff] has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except she can never climb ladders, ropes or scaffolds or crawl; she can occasionally climb ramps or stairs, stoop, kneel, or crouch; and she cannot reach overhead with either arm. (Tr. 17-18). After considering Plaintiff's medical history regarding her severe back pain, ALJ Lissek found the objective

16

medical evidence was inconsistent with the Plaintiff's allegations that she suffered from severe back pain. (Tr. 19). ALJ Lissek noted that even though Plaintiff was involved in a motor vehicle accident in February 2009, the MRI scans and x-rays of Plaintiff's lumbosacral, thoracic and cervical spine show at most minimal damage that was far from debilitating. (Tr. 18-19, 244, 247). Additionally, ALJ Lissek analyzed Plaintiff's physical examination findings, which further suggested the severity of Plaintiff's back pain was minimal. (See. Tr. 19, 198, 249, 267, 269, 288, 290-91, 306). Specifically, the ALJ noted that the opinions of the state agency review physicians were consistent with the opinions of the other physicians to the extent they agreed that Plaintiff remained capable of at least some work activity. (Tr. 21). Based on the record as a whole, the Court finds there is substantial evidence to support that ALJ's finding that Plaintiff's physical limitations showed that she is capable of performing sedentary work.

With respect to Plaintiff's other severe impairments, ALJ Lissek noted that it was consultative examiner Dr. Rubbani who provided the fibromyalgia diagnosis, and not Plaintiff's treating physicians, which included Dr. Gandhi and Dr. David. (Tr. 19). In fact, neither Dr. Gandhi nor Dr. David treated Plaintiff for fibromyalgia. The Court further notes that because it was Plaintiff's burden to show functional limitations as well as a diagnosis, the "Commissioner was entitled to rely not only on what the record says, but also on what it does not say." See Lane v. Comm'r of Soc. Sec., 100 Fed. Appx. 90, 95-96 (3d Cir. 2004) ("Absent evidence that a claimant has any work-related functional limitations, the claimant cannot establish disability under the Social Security Act... [because the burden is on] [t]he claimant [to] show not just diagnosis, but functional limitations preventing performance of substantial gainful activity."). Because Plaintiff failed to identify any medical evidence or assert any self-reported complaints that showed additional functional limitations, Plaintiff has not met her burden.

In addition, Plaintiff contends that the ALJ erred when incorporating additional limitations into Plaintiff's RFC to perform sedentary work because the ALJ failed to provide any justification as to how these limitations would realistically affect her ability to perform sedentary work. As an initial matter, these limitations are included in the RFC determination because ALJ Lissek was mindful of Plaintiff's painful symptoms and thereby wanted to limit the range of work that she was capable of performing. In addition, the ALJ's finding that "she cannot reach overhead with either arm" is consistent with Plaintiff's testimony that she had difficulty reaching overhead and reaching cabinets in her home. (Tr. 18, 43, 50, 125). Moreover, although Plaintiff disputes the unrealistic nature of the ALJ's finding that Plaintiff was limited to "low stress work," there is supporting case law cited by the Commissioner that found no error in similar definitions of "low stress" work.[3] See e.g., Hicks v. Comm'r of Soc. Sec., No. 09-2191, 2010 U.S. Dist. LEXIS 59990, at *15 (D.N.J. June 16, 2010) (Affirming ALJ decision in which low stress work encompassed "only an occasional change in the work setting during the work day and only an occasional change in decisionmaking"); Battiato-Musson v. Comm'r of Soc. Sec., No. 08-3531, 2009 U.S. Dist. LEXIS 63228, at *37 (D.N.J. July 23, 2009) (Affirming ALJ decision in which the court defined low stress work as "only occasional contact with supervisors, co-workers, and the public, and which allowed three breaks during the workday."). Given that ALJ Lissek's RFC determination reflected a reasonable assessment of the record of Plaintiff's physical and mental limitations, the Court finds Plaintiff's limitations were supported by substantial evidence.

---

[3] The Court notes that Plaintiff did not file a response brief challenging the Commissioner's cited case law, which were consistent with the "low stress" definition applied by ALJ Lissek.

18

## d. The ALJ Properly Relied Upon Vocational Expert Testimony

Lastly, Plaintiff argues that "the hypothetical questions to the VE [bore] little if any resemblance to the medical evidence." (Pl. Br. 10). In <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 (3d Cir. 2005), the Third Circuit ruled that an "ALJ must accurately convey to the VE all of a claimant's *credibly established limitations*." (emphasis added). The record showed that based on the hypothetical questions posed to VE, the VE concluded that:

> [Plaintiff] would be able to perform the requirements of representative occupations such as: (1) addresser...of which there are 4—such jobs locally and 10,0000 such jobs nationally; (2) patcher...which there are 200 such jobs locally and 11,000 such jobs nationally; (3) final assembler...which there are 800 such jobs locally and 18,000 such jobs nationally.

(Tr. 22; <u>see also</u> Tr. 172). In this case, the ALJ's hypothetical questions were proper because they adequately considered Plaintiff's physical and mental limitations. Accordingly, there is substantial evidence that could lead a reasonable person to conclude that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

## V. <u>CONCLUSION</u>

For the reasons stated above, the final decision entered by ALJ Lissek is **affirmed**. An appropriate order will accompany this opinion.

/s/ Dennis M. Cavanaugh, U.S.D.J.

Date: October 18, 2013
Original: Clerk's Office
cc: Hon. James B. Clark, U.S.M.J.
All Counsel of Record
File